IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMEEL SIMPSON,

     Petitioner,

  v.

JAMES ERKERD, et al.,

     Respondent.

CIVIL ACTION
NO. 14-4999

## OPINION

**Slomsky, J.**             **August 14, 2017**

## I. INTRODUCTION

 Before the Court is a Petition for Writ of Habeas Corpus filed by Jameel Simpson pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner is a prisoner in state custody. United States Magistrate Judge Linda K. Caracappa issued a Report and Recommendation ("R&R"), recommending that the Petition be denied and that a certificate of appealability not be issued. (Doc. No. 19.) Petitioner has filed numerous objections to the R&R. (Doc. No. 20.) For reasons that follow, the Court will approve and adopt the R&R and will deny the Petition for Writ of Habeas Corpus.[1]

## II. BACKGROUND

 The trial court summarized the underlying facts of Petitioner's state court conviction as follows:

---

[1] In regard to this Opinion, the Court has considered the Petition for Writ of Habeas Corpus (Doc. No. 1), the Response in Opposition to the Petition (Doc. No. 17), the Magistrate Judge's Report and Recommendation (Doc. No. 19), Petitioner's Objections to the Report and Recommendation (Doc. No. 20), and the pertinent state court record.

On the night of February 4, 2001, [Petitioner] and three of his friends went together to a private club in West Philadelphia, [the "Wheels of Soul."] The club was run by members of a motorcycle club, and it was licensed to sell alcohol to its members and their guests. Charlie Wilson was the "doorman" serving in a security position on that night and he searched the four [men] before he let them into the club. Mr. Wilson testified that two of the males were arguing with each other as they entered the club.

[Mr. Wilson] warned the two [males] about causing a disturbance in the club as he was completing his search of them. While he was finishing his search of one of the men who was arguing, the other one threw a punch. Mr. Wilson grabbed one of the men and wrestled him to the ground while other club members subdued the man who had tried to punch his friend. The deceased in this case, Jerome Robinson, was one of the other club members who came to Mr. Wilson's aid. After the disturbance quelled, all four . . . men who had come to the club together were put out of the club. Though he was not one of the two who were arguing and scuffling as they entered the club, [Petitioner] did have words with Mr. Wilson on his way out and told him to "check" his pockets to "make sure you got your money."

Later that night[,] in the early hours of February 5, 2003, Mr. Wilson was still in his position as the doorman [] handling security for the club. A female knocked on the door, and [Robinson] opened it and let her in. [Petitioner] was identified at trial as the person who followed [the female] through the club door, and fired one shot with a handgun that struck [Robinson] in the abdomen. That gunshot proved to be fatal, as it severed major arteries that caused [Robinson] to bleed internally. Mr. Wilson found a handgun in the club, and he ran outside after [Petitioner] who had immediately fled after he shot [Robinson]. [Mr. Wilson] saw him running down a small street adjacent to the club, and he yelled at him to stop. [Petitioner] turned around and fired a shot at him, and Mr. Wilson responded by firing his handgun at [Petitioner.] They exchanged two more shots, and Mr. Wilson returned to the club after his handgun "blew up" in his hand.

Shortly after [Robinson] was shot, Officer Robert Wuller was in a marked patrol vehicle a few blocks from the private club when he and his partner arrested Ralph Burnett [for selling narcotics.]. . . Officer Wuller began questioning Burnett, and he observed an injury to his face. . . Officer Wuller suspected that he was one of the four males who had been at [the Wheels of Soul] just before the decedent was shot and killed . . . [Burnett] was transferred to the [homicide division's] custody and questioned[.] [Burnett] gave a written statement to the homicide detectives in which he described in detail what had happened in the club when the four of them were ejected. In that statement, Burnett told the detectives that after they drove away from the club, [Petitioner] told him "he was going to get his hammer." [Burnett] also said in his statement that while [Petitioner] was being put out of the club, he told the members "that he would be back."

At the conclusion of the homicide investigation, an arrest warrant was issued for [Petitioner]. [On February 6, 2003, when the police were at his residence, [Petitioner] attempted to escape by climbing out of a second floor window and hiding on the roof. The police eventually arrested [Petitioner] on that same date and took him into custody.] [The Commonwealth] charged [Petitioner] with the murder of Jerome Robinson, aggravated assault for shooting at Charlie Wilson, and numerous related offenses.

(Doc. No. 19 at 1-2 (internal citations omitted).)

On April 19, 2006, a jury convicted Petitioner of first-degree murder, aggravated assault, and carrying a firearm without a license. (Id. at 1.) On July 12, 2006, Petitioner was sentenced to a term of life imprisonment. (Id.; Doc. No. 1 at 4.) Petitioner timely appealed his conviction and sentence to the Pennsylvania Superior Court. The Superior Court cited Petitioner's claims as follows:

1. Was it [an] error for the [trial] court to permit the prosecutor to cross-examine [Petitioner's] primary defense witness with respect to her treatment "for any mental illness, disease, or disorder";

2. Was it [an] error for the [trial] court to permit the prosecutor to ask an assigned detective whether he had conducted an investigation "to determine whether or not" an alternative suspect was involved in the instant homicide;

3. Was it [an] error for the [trial] court to permit the prosecutor to ask questions suggesting that a recanting witness had been improperly pressured;

4. Was it [an] error for the [trial] court to overrule [Petitioner's] objections to the Commonwealth's closing statement;

5. Was it [an] error for the [trial] court to permit the jury to view a photo which had been taken by a police officer nearly two years after the incident; and

6. Was it [an] error for the [trial] court to permit the deliberating jury to review the written statements of a recanting witness?

(Doc. No. 19 at 3 (internal citation omitted).) On December 21, 2007, the Pennsylvania Superior Court affirmed the trial court's judgment of sentence. (Id.) On June 4, 2008, the Pennsylvania Supreme Court denied a petition for allowance of appeal. (Id.)

On April 29, 2009, Petitioner filed a timely pro se petition for post-conviction relief in state court, pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Const. Stat. Ann. § 9541, et seq. (Id.) Counsel was appointed and on July 22, 2010, counsel filed a no merit letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988), along with a motion to withdraw.[2] (Id.) On September 17, 2010 Terri Himebaugh, Esquire, entered his appearance on behalf of Petitioner and filed a motion for time to investigate potential claims and file an amended PCRA petition. (Id.) On November 10, 2010, counsel filed an amended PCRA petition, along with a supporting memorandum of law. (Id. at 3-4.) On May 4, 2012, the PCRA court dismissed the petition.

Next, Petitioner appealed to the Pennsylvania Superior Court, arguing that the PCRA court had not considered Petitioner's memorandum of law when ruling that Petitioner's issues were insufficiently supported by facts and legal arguments. (Id. at 4.) On February 1, 2013, the Superior Court remanded the case to the PCRA court with instructions to reconsider the petition with the supporting arguments offered in the memorandum of law. (Id. (internal citation omitted).) On October 1, 2013, the PCRA court again dismissed the PCRA petition. (Id.) On October 18, 2013, Petitioner appealed to the Superior Court. (Id.) On June 19, 2014, the Superior Court affirmed the PCRA court's dismissal of the PCRA petition. (Id.)

On August 27, 2014, Petitioner filed the instant federal habeas corpus petition in this Court pursuant to 28 U.S.C. § 2254, raising the following claims:

---

[2] Pursuant to Commonwealth v. Finley, 550 A.2d 213, 215 (Pa. Super. Ct. 1988), appointed counsel in a post-conviction proceeding may be given leave to withdraw upon the submission of a "no-merit" letter that details the nature and extent of counsel's review of the case, lists each issue the petitioner wished to have reviewed, and explains counsel's assessment that the case lacks merit. In addition, the court must conduct an independent review of the record and must agree with counsel that the petition is meritless before dismissing the petition. Id.

1. Ineffective assistance of trial counsel in that trial counsel had a conflict of interest which should have precluded counsel from representing Petitioner and which prejudicially impacted Petitioner's ability to present a defense;

2. Ineffective assistance of trial counsel for failing to investigate potential alibi witnesses, give timely notice of an alibi defense, call the alibi witnesses at trial and present corroborating evidence;

3. Ineffective assistance of trial counsel for failing to obtain latent fingerprint reports;

4. Petitioner was denied his Fourteenth Amendment right to due process of law and his rights pursuant to Brady v. Maryland in that the prosecution failed to disclose to the defense the existence of a police statement taken from Tyriek Newell, and ineffective assistance of trial and appellate counsel for failing to investigate the existence of said police statement, to obtain it and/or raise and preserve this claim on direct appeal;

5. Ineffective assistance of trial counsel for failing to call several witnesses;

6. Petitioner was denied his rights under the Sixth and Fourteenth Amendments when the trial court permitted the prosecutor to question recanting witness [Ralph] Burnett suggesting without any evidentiary basis for doing so, that Burnett had been pressured by others to repudiate his post-arrest accusations;

7. Petitioner was denied his rights under the Sixth and Fourteenth Amendments when the trial court overruled petitioner's objections to the Commonwealth's closing statement;

8. Petitioner was denied his rights under the Sixth and Fourteenth Amendments when the trial court permitted the prosecution to impeach a defense witness with respect to her mental health history and treatment; and

9. Petitioner was denied his rights under the Sixth and Fourteenth Amendments when the trial court permitted the prosecutor and detective to impermissibly bolster the prestige of the police witness.

(Doc. No. 19 at 5; see also Doc. No. 1.)

On February 28, 2017, the Magistrate Judge issued a R&R in which she recommended denying the Petition for Writ of Habeas Corpus. (Doc. No. 19.) Petitioner filed Objections to the Magistrate Judge's R&R. (Doc. No. 20.) For the reasons that follow, the Court finds that the

Objections are without merit and will adopt the R&R (Doc. No. 19) and will deny the Petition (Doc. No. 1).

## III.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief. Any party may file objections in response to the magistrate judge's report and recommendation. Id. at § 636(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir.1987). See also 28 U.S.C. § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation. Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections[.]" Savior v. Superintendent of Huntingdon SCI, No. 11–5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012). Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter. Salve Regina College v. Russell, 499 U.S. 225, 238 (1991). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the

6

exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

## IV. ANALYSIS

Petitioner's first, second, third, fourth, and sixth claims were properly exhausted in the state court and therefore his objections to the R&R on these claims will be addressed on the merits. However, Petitioner's fifth, seventh, eighth, and ninth claims were properly dismissed by the Magistrate Judge as procedurally defaulted.

### A. Petitioner's First Objection That the Magistrate Judge Erred in Denying His Ineffective Assistance of Counsel Claim Based on a Conflict of Interest Is Without Merit

Petitioner's first objection relates to the Magistrate Judge's finding that Petitioner had failed to establish a meritorious ineffective assistance of counsel claim. (Doc. No. 20 at 2-6.) Petitioner argues that his trial counsel, Nino Tinari, Esquire,[3] had a conflict of interest that should have precluded him from representing Petitioner, and that Nino Tinari's representation prejudicially impacted Petitioner's ability to present a defense. (Id.) As will be discussed below, this objection is without merit.

The Sixth Amendment of the United States Constitution recognizes the right of every criminal defendant to effective assistance of counsel. U.S. Const. amend. VI. To evaluate an ineffective assistance of counsel claim in violation of the Sixth Amendment, the court must apply a two-prong test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, trial counsel is presumed to have acted effectively unless a petitioner can show that: (1) counsel's "representation fell below an objective standard of reasonableness[;]" and (2) counsel's deficient performance prejudiced the petitioner. Id. To

---

[3] In this section only, Nino Tinari, Esquire, will be referred to by his full name in order to distinguish him from his son, Eugene Tinari. Throughout the rest of this Opinion, he will be referred to as trial counsel.

establish prejudice, a petitioner must show that there is a "reasonable probability that, but for [counsel's] unprofessional errors, the result of the proceeding would have been different." Id. at 687-88, 694. "Judicial scrutiny of counsel's performance must be highly deferential . . . [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689.

Petitioner contends that his trial counsel, Nino Tinari, Esquire, was ineffective because counsel had a conflict of interest that should have prevented him from representing Petitioner. Petitioner alleges that Nino Tinari failed to call two witnesses, Kenneth Newell and Nate Hunter,[4] due to Nino Tinari's alleged prior representation of these two witnesses. (Doc. No. 19 at 8.) In his Objections to the R&R, Petitioner makes four substantially similar objections regarding Nino Tinari and Kenneth Newell's relationship and how it related to his defense. (Doc. No. 20 at 2-6.)

First, Petitioner contends that his trial counsel, Nino Tinari, was ineffective under Strickland because the PCRA court never held an evidentiary hearing to verify the credibility of the representations made by Nino Tinari. (Id. at 3.) The PCRA court and the Magistrate Judge have reviewed Petitioner's claim that Nino Tinari represented Kenneth Newell on unrelated charges which, Petitioner alleges, prejudiced Petitioner because he wanted Kenneth Newell to be called as a witness. (Doc. No. 19 at 11.)

Nino Tinari, Esquire, stated on the record that he never represented Newell. (Id.) Nino Tinari explained under oath that it was his son, Eugene Tinari, Esquire, who represented Newell

---

[4] Petitioner does not object to the Magistrate Judge's finding on this claim in regard to Nate Hunter. The Magistrate Judge found that Petitioner failed to prove that there was any conflict of interest regarding Nate Hunter and that Petitioner failed to demonstrate that his counsel's performance fell below an "objective standard of reasonableness." (Doc. No. 19 at 14 (internal citation omitted).) Because Petitioner did not object to the Magistrate Judge's finding on Hunter, this Court will not address the part of his Petition related to him.

in unrelated matters.  (Id. at 10.)  The Commonwealth informed the PCRA Court that, while the docket entry listed Nino Tinari as representing Kenneth Newell at a hearing, the entry of appearance on the docket actually listed Eugene Tinari as counsel of record.  (Id.)  Further, Eugene Tinari stated on the record that he had appeared on Newell's behalf, not his father Nino Tinari.  (Id.)

Second, Petitioner argues that the Magistrate Judge ignored evidence of record establishing that Nino Tinari actually represented Kenneth Newell.  (Doc. No. 20 at 4.)  The only proof Petitioner offered that trial counsel represented Newell is in Petitioner's Motion to Dismiss filed in state court.  In that Motion, Petitioner claimed that he asked Nino Tinari after his conviction why he did not call Kenneth Newell as a defense witness.  (State Ct. R., Pet'r's Motion to Dismiss at 7.)  Nino Tinari supposedly responded that although he and his son represented Newell on unrelated matters, Newell "would have hurt [Petitioner] if he took the stand."  (Id.)

Here, Petitioner's claim is refuted by the record.  As noted above, the record shows that the Commonwealth raised the conflict issue before Petitioner's first trial citing Nino Tinari's possible representation of Kenneth Newell.  (Doc. No. 19 at 10.)  The PCRA court found that it was Nino Tinari's son, Eugene Tinari, who had represented Kenneth Newell on a previous matter.  (Id.)  In this regard, Petitioner has failed to demonstrate that there is any evidence of record which establishes that Nino Tinari had previously represented Kenneth Newell.  Therefore, the Magistrate Judge did not ignore the evidence, and this objection is without merit.

Third, Petitioner argues that trial counsel was ineffective under Strickland because it is illogical to believe that Nino Tinari did not discuss the case with his son, Eugene Tinari.  (Doc. No. 20 at 4.)  Petitioner notes that Eugene Tinari originally represented Petitioner at his

preliminary hearing in this case. (Doc. No. 20 at 4-5.) However, there is nothing in the record to indicate that after Nino Tinari became attorney of record in the trial court in Petitioner's case that Nino Tinari and Eugene Tinari discussed Petitioner's case.

Trial counsel, Nino Tinari, cannot be found deficient for a conflict of interest that did not exist. Moreover, Petitioner offers no proof that indicates Nino Tinari and Eugene Tinari collaborated on his case or any other related case. Therefore, Petitioner has failed to demonstrate that his trial counsel's performance fell below an "objective standard of reasonableness." Strickland, 466 U.S. at 668.

Fourth, Petitioner objects to the Magistrate Judge's determination that Nino Tinari made a strategic decision not to call Kenneth Newell to the stand. (Doc. No. 20 at 3.) Petitioner argues that this determination was not based upon any evidence of record. (Id.) As discussed below, the Magistrate Judge took Charles Wilson's testimony into consideration when making this decision. (Doc. No. 19 at 11-12.) Further, the record shows that Kenneth Newell provided a statement to police that Petitioner was angry about being thrown out of the club and vowed to return "to take care of the old head who threw him out." (Id. (internal citation omitted).) The Magistrate Judge's determination that Nino Tinari made a strategic decision not to call Kenneth Newell to the witness stand was based on sufficient evidence of record.

In a case raising an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Strickland, 466 U.S. at 691. A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Id. A defendant asserting ineffective assistance of counsel must identify the acts or omissions that are

alleged not to be based on reasoned professional judgment. <u>Strickland</u>, 466 U.S. at 690. Then, a reviewing court must determine whether all the circumstances identified as acts or omissions were outside "the wide range of professionally competent assistance." <u>Id.</u>

Here, Nino Tinari introduced Kenneth Newell as an alternative suspect in Petitioner's trial through other evidentiary means. The Magistrate Judge noted:

> [T]hrough cross-examination of Charlie Wilson, the defense obtained testimony that Kenneth had been in the club shortly before the shooting and was wearing dark clothing, just like the person that Wilson pursued immediately after the shooting. Defense counsel also questioned the assigned detective, suggesting that police had failed to adequately investigate Kenneth as a suspect in the homicide. Additionally, defense counsel presented Petitioner's ex-girlfriend, Kaneisha Houston, who offered an elaborate tale about Kenneth's supposed involvement, including an alleged confession immediately after the shooting and a dramatic flight through the woods afterward, as well as purported threats she had received from him.

(Doc. No. 19 at 12 (internal citation omitted.)

Moreover, in further regard to Kenneth Newell, Petitioner contends that counsel was ineffective under <u>Strickland</u> because he was prejudiced by counsel's conflict of interest. (Doc. No. 20 at 5-6.) Petitioner contends that he was prejudiced because his counsel did not call Kenneth Newell as a witness at trial, notwithstanding the fact that counsel did introduce other evidence showing that Newell was an alternative suspect. (<u>Id.</u>) Having already presented evidence that implicates Kenneth Newell as a suspect, Nino Tinari's decision not to call Kenneth Newell as a witness cannot be said to have fallen below an objective standard of reasonableness. Furthermore, to argue there is a reasonable probability that the omission of Newell's testimony altered the outcome of the case is based on pure speculation.

The Court cannot find that the PCRA court's and the Magistrate Judge's decision that Nino Tinari's acts were not outside "the wide range of professionally competent assistance" was

an unreasonable application of <u>Strickland</u>.  Therefore, the objections raised on this ground are without merit.

### B. Petitioner's Second Objection That the Magistrate Judge Erred in Denying His Ineffective Assistance of Councel Claim Based on a Failure to Investigate a Potential Alibi Witness Is Without Merit

Petitioner's second objection is that trial counsel failed to investigate a potential alibi witness, Saffiyah Warren.[5]  (Doc. No. 20 at 6-10.)  Petitioner objects to the Magistrate Judge's findings that (1) Warren had no "personal knowledge regarding Petitioner's actual whereabouts at the time of the shooting and could only testify that she 'had a phone conversation with petitioner that evening'"; (2) in order to establish an alibi, the alibi witness must have personal knowledge of where Petitioner was; (3) the cell phone records would not prove that Petitioner was at Tyriek Newell's mother's house; and (4) even if this evidence had been presented it would not exculpate Petitioner because it did not directly contradict the other evidence.  (<u>Id.</u>) Petitioner's objection is without merit.

Under Pennsylvania law "[t]o prevail on a claim that trial counsel rendered ineffective assistance by failing to call a witness, the defendant must show that (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or should have known of the witness' existence; (4) the witness was prepared to cooperate and would have testified on the defendant's behalf; and (5) that the absence of the witness' testimony prejudiced the defendant."  <u>Commonwealth v. Brown</u>, 767 A.2d 576, 582 (Pa. Super. Ct. 2001).

---

[5] Petitioner does not object to the Magistrate Judge's finding relating to Tyriek Newell as a potential alibi witness.  The Magistrate Judge found that Petitioner failed to show that Tyriek Newell was available to testify at Petitioner's trial and that Petitioner failed to meet his burden of showing any likelihood that the verdict would have been different if trial counsel had called Tyriek Newell to testify.  (Doc. No. 19 at 16.)  Because Petitioner did not object to the Magistrate Judge's finding, this Court will not address the part of his Petition related to Tyriek Newell.

"[Petitioner] has the burden of showing that the trial counsel had no reasonable basis for failing to call a particular witness." Commonwealth v. Small, 980 A.2d 549, 560 (Pa. 2009).

In order to show ineffective assistance of counsel, a petitioner must show that the witness was available to testify, Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991), cert. denied, 502 U.S. 902 (1991), and that there is "a reasonable likelihood that . . . information [not presented] would have dictated a different trial strategy or led to a different result at trial." Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990). "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless . . . counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S. at 691. If counsel determines that particular investigations are unnecessary, counsel has a duty to base that decision on reasonable grounds. Id. at 690-91. When a court is assessing a "particular decision not to investigate," the court must look at counsel's decision directly for "reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id.

Petitioner contends that he informed trial counsel that he was at Tyriek Newell's mother's house and was on a landline telephone talking to his girlfriend, Saffiyah Warren, at the time of the shooting. (Doc. No. 17 at 14.) However, Warren had no personal knowledge concerning Petitioner's actual whereabouts at the time of the shooting. Warren only would have testified that she was on the phone with Petitioner that evening. Because Warren could not testify to Petitioner's actual physical whereabouts, trial counsel had no reason to believe calling Warren to the stand would have exonerated Petitioner. Petitioner has offered no evidence to show that the failure to investigate the phone records to show that Petitioner was talking to his girlfriend at the time of the shooting was unreasonable.

Because Warren's testimony would not exonerate Petitioner, he has failed to show that the absence of her testimony prejudiced him. Moreover, trial counsel had a reasonable basis for not calling Warren. Therefore, this objection is without merit.

### C. Petitioner's Third Objection That the Magistrate Judge Erred in Denying His Ineffective Assistance of Counsel Claim Based on a Failure to Obtain Latent Fingerprints Is Without Merit

Petitioner's third objection is that trial counsel failed to obtain potentially exonerating forensic latent fingerprint reports. (Doc. No. 20 at 10-12.) Petitioner notes that Charles Wilson[6] testified that immediately after the shooting, Petitioner jumped into the passenger side of Nate Hunter's vehicle which drove away from the crime scene. (Doc. No. 19 at 16-17.) Petitioner claims that latent fingerprints were taken from that vehicle and that trial counsel failed to obtain a forensic analysis of those prints. (Id.) Petitioner alleges that if counsel had obtained the fingerprint analysis report, it would have established that none of the fingerprints were his prints. (Id.) Petitioner objects to the Magistrate Judge's finding that "the lack of fingerprint evidence would not have proven that petitioner was not in the getaway vehicle" and that Petitioner was unable to establish prejudice. (Id.) This objection is without merit.

As previously noted, to establish an ineffective assistance of counsel claim under Strickland, a petitioner must show that: (1) his counsel's performance fell below an "objective standard of reasonableness" and (2) this deficient performance prejudiced the petitioner's defense. Strickland, 466 U.S. at 687-88, 694. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Id. at 694. Further, Pennsylvania courts have held that "the absence of . . . fingerprints is not exculpatory per se and might be explained for any one of

---

[6] Charles Wilson was the "doorman" serving in a security position on the night of the murder. (Doc. No. 19 at 1-2 (internal citations omitted).)

many reasons consistent with his guilt." <u>Commonwealth v. Wright</u>, 388 A.2d 1084, 1086 (Pa. Super. Ct. 1978). A petitioner must show more than the fact that fingerprint evidence was not produced. <u>See</u> <u>id.</u> He must show that this failure to produce the fingerprint evidence prejudiced his defense. <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88, 694.

Here, Petitioner offered no evidence that the verdict would have been different with the introduction of fingerprint evidence lifted from the getaway vehicle. Instead, Petitioner states in his objection that "[w]hile the lack of fingerprints may not have, by itself established the reasonable probability that the jury would have found reasonable doubt," the lack of fingerprints on the door would have impacted the jury's determination of the credibility of Charles Wilson's and Clarence Cannady's testimony. (Doc. No. 20 at 10-11.) Cannady was a member of the Wheels of Soul Motorcycle Club and was present at the time of the murder. He testified that he was running behind Wilson when they attempted to apprehend Petitioner and saw Petitioner's face when he turned around for a moment. (<u>Id.</u> at 16.) Wilson testified that immediately after the shooting, Petitioner was running and jumped into the passenger side of Nate Hunter's vehicle as it pulled away from the crime scene. (Doc. No. 19 at 16-17.) Put simply, Petitioner's defense was not prejudiced because he failed to establish that the fingerprints would have changed the verdict. Therefore, Petitioner failed to prove that counsel was ineffective and his third objection is without merit.

### D. Petitioner's Fourth Objection That the Magistrate Judge Erred in Denying His Brady Claim Based on the Failure to Disclose a Police Statement Is Without Merit

Petitioner's fourth claim in his Petition is that the Commonwealth violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by withholding a statement made by Tyriek Newell, and that trial and appellate counsel were ineffective for failing to raise this claim. (Doc. No. 20 at 12.) Petitioner alleges that all witness statements were turned over to counsel, except for a statement

Tyriek Newell made to police about events occurring on the night of the murder. (Doc. No. 19 at 18.) The Magistrate Judge found that there was no Brady violation. (Id. at 20.)

In Brady, the United States Supreme Court held "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Brady, 373 U.S. at 87. To establish a Brady violation, a petitioner must demonstrate: (i) evidence was suppressed by the state, either willfully or inadvertently; (ii) the evidence is favorable to the accused, either because it is exculpatory or impeaching; and (iii) the evidence was material to the outcome of the case. Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Evidence is Brady material when it places the "whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). Further, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," then the evidence must have been disclosed. Strickler, 527 U.S. at 280 (citation omitted). In order for evidence to be material, it is not necessary that the evidence be established by a preponderance that its disclosure would have resulted in an acquittal. Kyles, 514 U.S. at 434. Rather, in making a determination of materiality, the assessment of the omitted evidence's impact must take account of the cumulative effect of the suppressed evidence in light of all the other evidence, not merely the value of the suppressed evidence standing alone. Id. at 436-37.

In this case, a Brady violation did not occur. First, the Magistrate Judge explained that Tyriek Newell's statement failed to meet the first requirement to establish a Brady violation— that is, a petitioner must show that evidence was suppressed by the state, either willfully or inadvertently. (Doc. No. 19 at 19-20.) Specifically, the Magistrate Judge concluded that Petitioner failed to offer any proof that trial counsel was not provided with a copy of Tyriek

Newell's statement, thus he could not prove that the Commonwealth suppressed the evidence.

(Id.) Petitioner objects to the Magistrate Judge's finding as follows:

> Petitioner objects to the Magistrate Judge's finding that there was no "offer of proof that trial counsel was not provided with a copy of Tyriek Newell's statement."[7] Petitioner argues that "(1) there was no cover letter from the Commonwealth enclosing the statement, as is their custom, pattern, and practice of providing when passing discovery to defense counsel; (2) there is no indication on the Police Activity Sheet, which purports to list all the civilian interviews that Tyriek Newell gave a statement; and (3) Lead Detective Cummings testified that he had no idea that Tyriek Newell had even been in the club that night which in effect, denies having seen and/or taken his statement."

(Doc. No. 20 at 12-13.)

These objections, however, do not demonstrate that Newell's statement was suppressed or that trial counsel was not provided with a copy of the statement. The absence of a cover letter enclosing Newell's statement does not mean that the statement was not turned over to the defense.

Second, Tyriek Newell's statement fails to meet the second requirement to establish a Brady violation—that is, the evidence is favorable to the accused, either because it is exculpatory or impeaching. Strickler, 527 U.S. at 281-82. The Magistrate Judge found that Tyriek Newell's statement did not exonerate Petitioner nor did the statement support Petitioner's argument that Petitioner spent the evening with Tyriek Newell at Newell's mother's house. (Doc. No. 19 at 20.) Tyriek Newell's statement is summarized as follows:

> In his statement, Tyriek notes, on two occasions, that [petitioner] was angry over being kicked out of the club. Tyriek further stated that, after he, [petitioner] and their two friends, "Doe" and "Mar," had been kicked out of the club, the four men went to 62nd and Vine Streets. Tyriek further stated that, while at 62nd and Vine Streets, Doe was arrested, and that following the arrest "I left and went home." Notably, Tyriek did not state that he went straight home from the club to his mother's house or that [petitioner] came with him. As such, contrary to

---

[7] Petitioner did not have any objections relating to the ineffective assistance of counsel claims regarding the alleged Brady violation.

[petitioner's] assertions, Tyriek's statement does not corroborate [petitioner's] alibi theory. . . .

(Id. at 19 (internal citations omitted).)  Petitioner argues that he was at Tyriek Newell's mother's house with Tyriek during the shooting.  Tyriek's statement, however, does not mention that Petitioner was with him at any time during the shooting.  Tyriek's statement merely states Tyriek's whereabouts on the night of the shooting.  Because Tyriek's statement does not corroborate Petitioner's theory about being at Tyriek's mother's house during the shooting, the statement is not favorable to his defense.

Third, Tyriek Newell's statement fails to meet the third requirement to establish a Brady violation—that is, the evidence was material to the outcome of the case.  Strickler, 527 U.S. at 281-82.  The Magistrate Judge found that Tyriek's statement did not exonerate Petitioner nor did the statement support Petitioner's argument that he spent the evening with Tyriek Newell at Newell's house.  (Doc. No. 19 at 20.)  If Tyriek's statement was introduced at trial, it would not have changed the outcome of the case because, as mentioned above, Tyriek's statement does not corroborate Petitioner's alibi nor does it mention Petitioner's whereabouts at the time of the shooting.  Thus, Petitioner also fails to meet the third prong of the Brady test.

Accordingly, Petitioner's fourth objection to the Magistrate's finding that the Commonwealth's failure to turn over a police statement did not violate Brady v. Maryland is without merit.

### E. Petitioner's Sixth Objection That the Magistrate Judge Erred in Denying His Claim Based on Allowing the Prosecution to Question a Recanting Witness Is Without Merit

Petitioner's sixth objection is that he was denied his rights under the Sixth and Fourteenth Amendments when the trial court permitted the prosecutor to question Ralph Burnett, a recanting witness, about the identity of the individual he had lunch with on the day he recanted his

statement to police. Petitioner objects to the Magistrate Judge's finding that the prosecutor's questioning of this witness did not violate Petitioner's constitutional rights. (Doc. No. 20 at 17.) Petitioner argues that the purpose of the prosecutor's line of questioning was to suggest that Burnett had been pressured by individuals to recant his testimony. (Doc. No. 19 at 20 (internal citation omitted).)

Federal Rule of Evidence 607 provides that: "any party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607. This includes questioning the witness about his or her potential bias. United States v. Werme, 939 F.2d 108, 114 (3d Cir. 1991). When cross-examining a witness, "[p]roof of bias is almost always relevant because the jury, as the finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984). "Evidence is relevant if it has any tendency to make the existence of any fact that is at consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

Here, the Magistrate Judge found that the prosecution attempted to elicit Burnett's potential bias. (Doc. No. 19 at 22-23.) A review of the testimony reflects that the Magistrate Judge was correct in finding that the prosecutor was trying to establish that Burnett and Petitioner were friends and that Burnett had a relationship with Petitioner's family by questioning Burnett about having lunch with Petitioner's family on the day of his testimony. (Id. at 21 (internal citation omitted).) The prosecutor was trying to show Burnett's bias and propensity to change his story to Petitioner's benefit. Petitioner failed to prove that the prosecutor's questioning was intended to show that Burnett had been influenced by the defense to recant his statement.

Since the Petitioner failed to show that the prosecutor's questions to Burnett were anything other than an attempt to show bias and evidence showing bias is generally permitted, the Petitioner failed to prove that his right to a fair trial was violated. Therefore, Petitioner's sixth objection is without merit.

### F. Petitioner's Fifth, Seventh, and Eighth Objections Will Be Dismissed as Procedurally Defaulted

Petitioner's fifth, seventh, and eighth objections were not properly exhausted in state court and will be dismissed.[8] Petitioner makes the following objections: (i) Petitioner's fifth objection is that counsel failed to call Kina Hampton as a witness at trial; (ii) Petitioner's seventh objection is that the trial court overruled Petitioner's objections to the Commonwealth's closing argument to the jury; and (iii) Petitioner's eighth objection is that the trial court improperly permitted the prosecution to impeach Petitioner's primary defense witness by questioning the witness' mental health history. Because these objections were not properly exhausted in state court, they will be dismissed as procedurally defaulted. The Magistrate Judge summarized the relevant law as follows:

> Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). A petitioner is not deemed to have exhausted the remedies available to him if he has a right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c) (1994); Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059, *reh'g denied*, 490 U.S. 1076, 109 S. Ct. 2091 (1989). In other words, a petitioner must invoke "one complete round of the state's established appellate review process" in order to exhaust his remedies. O'Sullivan, 526 U.S. at 845. A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, which burden demands, in turn, that the claims brought in federal court be the "substantial equivalent" of those presented to the state courts.

---

[8] Petitioner's ninth claim in his habeas petition was that the trial court erred in permitting the prosecutor and detective to impermissibly bolster the prestige of a police witness. (Doc. No. 20 at 21.) In his objections, Petitioner concedes that his ninth claim is procedurally defaulted. For this reason, the Court will not address the ninth claim of Petitioner.

Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982), *cert. denied*, 459 U.S. 1115, 103 S. Ct. 750 (1983). "If [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claim procedurally barred . . . there is procedural default for the purpose of federal habeas . . . ." Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, *reh'g denied*, 501 U.S. 1277, 112 S. Ct. 27 (1991); McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). The procedural default barrier also precludes federal courts from reviewing a state petitioner's federal claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment. Coleman, 501 U.S. at 729; see also Nolan v. Wynder, 363 Fed. Appx. 868, 871 (3d Cir. 2010); Taylor v. Horn, 504 F.3d 416, 427-28 (3d Cir. 2007). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011) (quoting Beard v. Kindler, 558 U.S. 53, 130 S. Ct. 612 (2009))

(Doc. No. 19 at 23-24.) Because Petitioner's fifth, seventh, and eighth objections were not properly exhausted in state court, these claims will be denied.

### i. Petitioner's Fifth Objection That the Magistrate Judge Erred in Denying His Ineffective Assistance of Counsel Claim Based on a Failure to Call Witnesses at Trial Is Procedurally Defaulted

Petitioner's fifth objection is that counsel failed to call Kina Hampton as a witness at trial. Petitioner argues that Hampton's testimony would have rebutted another eyewitnesses' testimony.[9] (Doc. No. 20 at 15-17.)

In the R&R, the Magistrate Judge found this claim procedurally defaulted:

Petitioner's failure to raise this claim in the Concise Statement of Matters Complained of on Appeal in the Superior Court constitutes waiver under the law of the state. See Pa. R. A. P. 1925 (issue must be raised in Statement of Matters Complained of on Appeal or be waived). Waiver of a claim for failure to comply with the requirements of Pa. R. A. P. 1925(b) and identify all issues to be reviewed on appeal has been found to be an adequate and independent ground sufficient to invoke the procedural default doctrine. See Edwards v. Wenerowicz, No. 11-3227, 2012 U.S. Dist. LEXIS 21908, 2012 WL 568849, at *4 (E.D. Pa.

---

[9] Petitioner does not object to the Magistrate Judge's finding on the fifth claim in his Petition relating to Anthony Rosselli. The Magistrate Judge found that the court is precluded from federal review of this claim because the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment. (Doc. No. 19 at 24-25.) Because Petitioner did not object to the Magistrate Judge's finding, this Court will not address the part of his Petition related to Anthony Rosselli.

Jan. 31, 2012) ("The Third Circuit has specifically recognized that a failure to comply with Rule 1925(b) and identify all issues to be reviewed on appeal resulting in waiver at the state court level constitutes procedural default on independent and adequate state grounds.") (citing <u>Buck v. Colleran</u>, 115 F.App'x 526, 528 (3d Cir. 2004)). As such, we find that this court is precluded from federal review of petitioner's fifth claim of this habeas petition since the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment. <u>See</u> <u>Coleman</u>, 501 U.S. at 729.

(Doc. No. 19 at 24-25.)

Petitioner argues that finding this claim procedurally defaulted and refusing to review it on the merits would result in a fundamental miscarriage of justice due to new reliable evidence establishing actual innocence. (Doc. No. 20 at 15.) Courts have applied the "fundamental miscarriage of justice exception" to overcome various state procedural defaults.

Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

<u>Schlup v. Delo</u>, 513 U.S. 298, 316 (1995). The fundamental miscarriage of justice exception is narrow. <u>Coleman v. Greene</u>, 845 F.3d 73, 76 (3d Cir. 2017). "[A] petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." <u>Schlup</u>, 513 U.S. 298 at 327.

Here, Petitioner asserts that he is innocent of the instant crime. (Doc. No. 20 at 16.) He has presented "new evidence and witnesses that . . . were not presented to the jury" through Hampton's testimony. (<u>Id.</u>) Petitioner argues that his counsel was ineffective for failing to call Kina Hampton because Hampton gave a statement to police explaining that the only person she saw running up the street on the night of the incident was Charles Wilson. (<u>Id.</u>) This statement

contradicts trial testimony by another eyewitness, Clarence Cannady, that he was behind Wilson and saw Petitioner's face when he turned around. (Id.) Petitioner asserts that Hampton's testimony is new evidence that would have helped establish Petitioner's innocence. (Id.)

Hampton's testimony if presented at trial would have been insufficient to show that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Although Hampton provided a statement to trial counsel that the only person she saw running up the street was Wilson, there are multiple eyewitness accounts that Petitioner was at the scene of the crime and that he shot Robinson. (Doc. No. 19 at 15 (internal citation omitted).) Hampton's statement is not enough to meet the standard in the narrow range of cases where the miscarriage of justice exception applies. Therefore, this claim is procedurally defaulted because it was not raised at the state court level.

> **ii. Petitioner's Seventh Objection That the Magistrate Judge Erred in Denying His Claim Based on the Fact That the Court Overruled Petitioner's Objections to the Commonwealth's Closing Statement Is Procedurally Defaulted**

Petitioner's seventh objection is that the trial court overruled Petitioner's objections to the Commonwealth's closing argument to the jury. (Doc. No. 20 at 18.) Petitioner alleges that three separate statements violated Petitioner's right to a fair trial when the prosecutor:

1. "dramatically used paper cups to mimic a 'shell game' while simultaneously arguing to the jury that defense counsel was attempting to obscure the truth";

2. insinuated that "unnamed courtroom spectators . . . had 'gotten to' Ralph Burnett and had somehow improperly influenced his testimony"; and

3. rhetorically asked "when you get to Kaneisha Houston, who's sitting with Kaneisha down at the end of the hall, who's pulling the strings."

(Doc. No. 19 at 25 (citing Doc. No. 1 at 33-34).) Petitioner first objects to the Magistrate Judge's finding that Petitioner's counsel on direct appeal waived the first and third arguments made in relation to this claim because they were not sufficiently developed and because

Petitioner failed to cite to any pertinent authority, making the first and third arguments procedurally defaulted. (Doc. No. 20 at 18.)

"While a person convicted of a crime is guaranteed the right to direct appeal under Article V, Section 9 of the Pennsylvania Constitution, where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." <u>Commonwealth v. Johnson</u>, 604 Pa. 176, 191 (Pa. 2009); <u>See also</u> <u>Kirnon v. Klopotski</u>, 620 F. Supp. 2d 674, 683-84 (E.D. Pa. 2008); Pa. R. App. P. 2119(a) (each point of an argument must be "followed by such discussion and citation of authorities as are deemed pertinent"). It is not a court's responsibility to frame the appellant's arguments. <u>Johnson</u>, 604 Pa. at 191.

Here, Petitioner asserts that the argument contained in his brief filed in the Superior Court cites both federal and state law that stands for the proposition that a prosecutor may not intentionally mislead a jury with improper suggests and insinuations. (Doc. No. 20 at 19.) However, if the case law cited does not "develop the claim in any . . . meaningful fashion," the claims are waived. Pa. R. App. P. 2119(a). The first argument relating to the claim that the prosecution mimicked a "shell game" was not fully developed. (Doc. No. 19 at 25-26.) The third argument relating to Kaneisha Houston cited no pertinent authority and Petitioner provided only three sentences of argument. (<u>Id.</u>) Therefore, the first and third arguments of this claim are procedurally defaulted for failure to comply with Pennsylvania Rule of Appellate Procedure 2119.

Petitioner further objects to the Magistrate Judge's finding relating to the second argument. (Doc. No. 20 at 19.) Petitioner contends that the Magistrate Judge misunderstood the argument that Petitioner was attempting to make. (<u>Id.</u> at 19.) Petitioner asserts that the

prosecutor misled the jury by making statements that were unsupported by any good faith evidence. (Id. at 19-20.) A review of Petitioner's memorandum of law shows that Petitioner did not cite to any testimony or state court decision to support this argument. (See Doc. No. 1.) Further, a review of the state court record shows that Petitioner failed to raise this claim before the state courts. Therefore, Petitioner is barred from raising this claim and Petitioner's second argument also is procedurally defaulted.

For the reasons stated above, Petitioner's seventh objection will be dismissed as procedurally defaulted.

### iii. Petitioner's Eighth Objection That the Magistrate Judge Erred in Denying His Claim Based on the Fact That the Court Permitted the Prosecution to Impeach Petitioner's Primary Defense Witness Is Procedurally Defaulted

Petitioner's eighth objection is that the trial court improperly permitted the prosecution to impeach Petitioner's primary defense witness by questioning the witness' mental health history and treatment. (Doc. No. 20 at 20.) Petitioner objects to the Magistrate Judge's finding that this claim was waived and procedurally defaulted in state court because trial counsel did not renew his objection. (Id.)

"In order to preserve an issue for review, a party must make a timely and specific objection." Commonwealth v. Brown, 701 A.2d 252, 254 (Pa. Super. Ct. 1997). Further, Pennsylvania law provides "[a]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." 42 Pa. Const. Stat. Ann. § 9544(b).

Here, Petitioner objected to the prosecutor's line of questioning when the prosecutor asked Kaneisha Houston "[if she had] ever been treated for any mental illness, disease or disorder[.]" (Doc. No. 19 at 27 (internal citation omitted).) The trial court sustained this objection and called counsel to sidebar. (Id.) The prosecution then continued questioning

Houston without further objections from defense counsel or Petitioner.  (Id.)  In the absence of a timely and proper objection in the state court habeas petition, the Petitioner's argument concerning the prosecutor's follow-up questioning is waived.  Therefore, this objection will be dismissed as procedurally defaulted.

## V.    CONCLUSION

For the foregoing reasons, the Court will adopt Magistrate Judge Caracappa's Report and Recommendation (Doc. No. 19) and will deny the Petition for Writ of Habeas Corpus (Doc. No. 1).  An appropriate Order follows.